MORE and another, Respondents, vs. MILWAUKEE MONUMENT
COMPANY, Appellant.

*October 6—October 24, 1905.*

(1–3) *Contract for building materials: Plans· and specifications: Ex-
tras: Breakage.*   (4) *Briefs in supreme court: Printing.*

1. Where the plans and specifications in accordance with which
    plaintiffs contracted to furnish and cut the stone for a mauso-
    leum showed a floor under the catacomb distinctly marked
    "granite floor," the fact that plaintiffs in their preliminary fig-
    uring overlooked such floor or failed to estimate it did not give
    them any right to extra compensation for the stone furnished
    therefor.
2. The evidence in this case is *held* to establish the fact that the
    detail drawings and models (furnished in accordance with the
    contract) for the carving on certain stones were in accord with
    the general character of the carving shown upon the blue-print
    plans with reference to which the contract for the work was
    made, so that plaintiffs were not entitled to extra compensa-
    tion on account of the elaborateness of such carving.
3. Granite vases included in the contract having been broken in
    transportation to the place at which they were to be delivered
    by the plaintiffs, defendant was entitled to a deduction from
    the contract price of the amount reasonably necessary to make
    the vases perfect.
4. Attention is called to an infraction of Supreme Court Rule IX
    by reprinting in appellant's brief evidence contained in the
    printed case, though in this instance it is unimportant because
    the case alone contains more than the number of pages for
    which allowance can be made under sec. 1, ch. 365, Laws of
    1905.

APPEAL from a judgment of the superior court of Milwau-
kee county: J. C. LUDWIG, Judge.   *Modified and affirmed.*

The plaintiffs are stonecutters at Montpelier, Vermont.
The defendant is a corporation engaged in manufacturing
monuments in the city of Milwaukee.   May 15, 1895, the de-
fendant made a written contract with the executors of the es-
tate of Valentine Blatz to furnish materials and erect a mau-
soleum in Forest Home cemetery at Milwaukee.   June 8,

1895, the plaintiffs made a written contract with the defendant to furnish and cut the stone for said mausoleum, and deliver the same f. o. b. cars at Layton Park station, Milwaukee county, in accordance with the plans and specifications therefor, for the sum of $16,300. This contract contained the following clause:

"(3) The *Milwaukee Monument Co.* agree to furnish free of cost to Chas. H. More & Co. full plans, specifications, and models for the proper understanding and execution of the work, and to do so without delay; otherwise, Chas. H. More & Co. shall not be held to their agreement as to time."

The complaint alleged performance of this contract by the plaintiffs and also the performance of extra work, caused by changes in the plans, amounting to $831, and admitted the receipt of payments thereon amounting to $14,951.87, and an allowance of $100 to the defendant for ironing the floor stones of the vault, making a total credit of $15,051.87, and demanded judgment against the defendant for the balance. The defendant's answer denied that any changes in the plans and specifications were made, and denied that any extra work was performed except two items amounting to $125, and alleged that it had made payments exceeding the amount admitted by the plaintiffs in the sum of $82.25. The answer also contained a counterclaim for damages caused by alleged imperfect workmanship and delay, amounting in all to $1,484.98. To this counterclaim the plaintiffs pleaded a general denial.

The issues were referred, and the referee found that the plaintiffs furnished and delivered stone in accordance with the contract and were entitled to the contract price of $16,300; that extra work was required and performed by the plaintiffs to the amount of $831, making the total amount due to the plaintiffs $17,131; that there had been paid thereon the sum of $14,951.87 in cash and freight bills paid by the defendant, over and above the admitted allowance of $100, making a

total credit to the defendant of $15,051.87. Upon the counterclaim the referee found that the defendant was obliged to expend, in carving certain stones so as to make them conform to the plans and specifications, sums amounting in all to $172.50, and that defendant was also entitled to credit for $15.70 for castings, for rubbing floors, and for chilled iron; also to credit for $90.67 for a carload of granite attached and held by the plaintiffs in Vermont; also to credit for $90.61 for the expenses of a trip made by one of the defendant's employees to Vermont. The referee found that the defendant was entitled to no allowance for delays, and reported that the plaintiffs were entitled to judgment for $1,708.65, with interest. The court modified this report by allowing the defendant $82.25 additional for freights paid, and entered judgment for the plaintiffs for $1,616.40, with interest and costs, and the defendant appeals.

For the appellant there was a brief by *Turner, Hunter, Pease & Turner,* and oral argument by *W. J. Turner.*

For the respondents there was a brief by *McElroy & Eschweiler,* and oral argument by *F. C. Eschweiler.*

WINSLOW, J. The appellant attacks all of the items of alleged extra work allowed to the plaintiffs by the referee, amounting to $831, except two items thereof, aggregating $125; and the first question to be considered is as to the correctness of the items so challenged. Two of these items in dispute, amounting to $500, are for the extra expense of carving five stones at $100 each; and the remaining three items, amounting to $206, are for six alleged extra stones under the catacombs and the cutting and joining thereof. The plaintiffs claim, and the court found, that all of these items were properly extras and not included in the contract.

As to the alleged extra stone under the catacombs, we can entertain no doubt that the testimony is entirely insufficient. The contract was to furnish stone in accordance with the

plans and specifications. These plans and specifications con-
sisted of certain blue-prints and drawings, all of which are
in evidence, and the correctness of which is not attacked.
Upon one of these blue-prints, which represents a cross-section
·of the structure, there appears a floor under the catacombs,
·which is distinctly marked "granite floor." The only other
·evidence on the question was that of the plaintiff *More,* who
testified that "we did not estimate any stone under the cata-
comb—that is, any granite—until our attention was called to
it *by the plans which were sent on from them.* I remember
Mr. Lohr [defendant's employee] making a sketch of the
floor and stone under the catacomb, when he was here, from
which we estimated. I do not think those stones could have
been shown, nor that we estimated them, so that we called
their attention to these stones and notified them just what
they would cost." From this testimony it very clearly appears
that the stones named were indicated in the plans and specifi-
cations in accordance with which the plaintiffs contracted to
·do the work. Such being the case, it can make no difference
that the plaintiffs in their preliminary figuring overlooked the
floor or failed to estimate it. In the absence of fraud or mis-
take (and none is claimed) the plans and specifications must
·govern.

As to the claim for $500 for alleged extra carving upon five
stones, different considerations apply; but we conclude that
the evidence fails to support this claim also. Upon the blue-
prints carving was indicated upon these stones by fine white
lines and tracery, which, however, were only intended to in-
dicate generally the character of the carving, and not intended
to constitute a distinct drawing from which the carving could
be done, nor did they in fact do so. This is very certain from
the evidence and from inspection of the blue-prints them-
selves. They indicated simply that there was to be carving
of a certain general character, and that there must be further
detailed drawings and models before it could be executed.

This is rendered more certain, if necessary, by that provision of the contract which requires the defendant to furnish "full plans, specifications, *and models* for the proper understanding and execution of the work." The models here spoken of referred to full-size models of the carvings, and they were furnished as the work progressed. There was much correspondence concerning them; the plaintiffs claiming, as they now claim, that they were of a different character and more elaborate than the blue-prints indicated. The evidence supporting this claim is very meagre, and it would hardly be profitable to review it. We have examined all the evidence on the subject carefully, and are forced to the conclusion that the evidence very clearly establishes the fact that the models and drawings furnished were in accord with the general character of the carving indicated upon the blue-prints, except in the case of one of the stones; and for the change in this stone due allowance was made in the findings.

It appears without dispute that two granite vases included in the contract were broken in transportation; but no allowance was made to the defendants, on the ground that the defendant had failed to show any liability on the part of the plaintiffs for them. We have not been able to understand the theory of this disallowance. The vases were a part of the contract, and were to be delivered at Layton Park. The plaintiffs have received credit for the entire contract price, which, of course, includes the price of the vases. They were delivered in a broken condition, and could not be used until repaired. The evidence showed without dispute that the cost of repairing was $90, and presumably this was the reasonable cost. It did not appear that the railroad company made good the breakage. Under these circumstances there was nothing further necessary to be shown by the defendant. The plaintiffs had failed to perform that part of their contract which required them to deliver perfect vases, and the defendant was clearly entitled to a deduction from the contract price of the

amount reasonably necessary to make the vases perfect. The item of $90 should therefore have been allowed to the defendant upon its counterclaim.

As to the claim of defendant to recover $1,159.27 for recutting a part of the stone on account of alleged defective cutting thereof by the plaintiffs, we find ourselves unable to say that the clear preponderance of the evidence is against the findings of the referee and court. While there is much evidence to support the claim, there is also considerable evidence, and some of it quite persuasive in its character, in support of the findings.

The appellant's brief is unnecessarily long. It consists of more than ninety pages, and reprints a large part of the evidence. The questions involved are merely questions of fact, and Rule IX of the rules of this court provides that "no extended discussion upon a mere question of fact will be permissible *in any brief* or at the bar, but the brief must *refer to the printed case,* where all the evidence bearing upon such leading facts or conclusions may be found." This rule was intended to prevent the reprinting in the brief of the evidence which has once been printed at length in the case, and to substitute therefor accurate references to the pages of the case where the evidence relied on may be found. Under the present law, which limits the amount to be allowed for printing to 150 pages (Laws of 1905, ch. 365, sec. 1), the redundancy of the brief is of no moment, because the case contains more than that number of pages; but the infraction of the rule is noticed for the purpose of calling the attention of the bar generally to the proper construction of the rule.

The judgment must be modified by reducing the plaintiffs' allowance for extra work by the sum of $706, and making an additional allowance to the defendant of $90 on its counterclaim for the broken vases, leaving the amount of plaintiffs' judgment $820.40, with interest from October 11, 1896, to the date of the judgment, and costs in the trial court as taxed,

amounting in all to $1,322.46, as to which sum the judgment must be affirmed, and reversed as to all exceeding that sum.

*By the Court.*—Judgment modified as indicated in the opinion, and affirmed as so modified, with costs to the appellant.